**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
ORLANDO DIVISION

CINDY MARQUEZ,

Plaintiff,

-vs-                                                Case No.  6:06-cv-240-Orl-JGG

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

_____

## MEMORANDUM OF DECISION

Plaintiff Cindy Marquez ["Marquez"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] terminating her benefits due to medical improvement.  *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **REMANDED**.

## I.    PROCEDURAL HISTORY

In May 1986, the Social Security Administration ["SSA"] awarded Marquez child supplemental security income based on Listing 103.03 (childhood asthma).  R. 61.  On July 2, 1998, after Marquez turned 18 years old, the SSA reevaluated Marquez's condition and determined that she met the criteria of listing 3.03B for asthma, and continued her benefits.[1]  *Id*.

The SSA subsequently reevaluated Marquez's condition and determined that there had been medical improvement in her condition, and that her disability ceased effective January 1, 2002, with

_____

[1] Listing 3.03B provides, "Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks."  20 C.F.R. Pt. 404, Subpt. P. App. 1, Listing 3.03B.

benefits terminating as of March 31, 2002.  R. 34-35, 59.  Marquez requested a hearing, which was

held on April 13, 2004, before the Honorable Albert D. Tutera, Administrative Law Judge ["ALJ"],

in Orlando, Florida.  R. 86-7, 372-84.  Non-attorney Robert Hicks represented Marquez at the hearing.

R. 374.  The ALJ heard testimony from Marquez only.

On June 16, 2004, the ALJ issued a decision that Marquez was not disabled and not entitled

to benefits.  R. 11-19.  Following a review of the medical and other record evidence, the ALJ found

that Marquez had no past relevant work and no acquired work skills.  R. 18, Finding 8.  The ALJ

found that Marquez nevertheless retained the residual functional capacity ["RFC"] to perform light

work.  R. 18, Finding 9.  Applying the Medical-Vocational Guidelines ["the grids"], the ALJ

concluded that Marquez was not disabled.  R. 20, Finding 12.

After considering a letter from Marquez's representative [R. 365-71], the Appeals Council

denied review on January 6, 2006.  R. 7-10.  On February 24, 2006, Marquez timely appealed the

Appeals Council's decision to the United States District Court.  Docket No. 1.  On September 28,

2006, Marquez filed in this Court a memorandum of law in support of her appeal.  Docket No. 19.

On November 14, 2006, the Commissioner filed a memorandum in support of her decision that

Marquez was not disabled.  Docket No. 20.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Marquez assigns three errors to the Commissioner.  First, Marquez claims that the ALJ erred

in relying on the grids instead of obtaining testimony from a vocational expert ["VE"].  Docket 19 at

3.  Second, Marquez claims that the ALJ erred in failing to obtain additional medical evidence after

Marquez testified as to the existence of additional hospital records.  *Id*.  Third, Marquez claims that the ALJ erred in finding her not fully credible.  *Id*.

The Commissioner argues that substantial evidence supports her decision to deny disability.  First, the Commissioner argues that Marquez's non-exertional impairments are not severe and that she could perform a wide range of light work.  Docket No. 20 at 6-7.  Second, the Commissioner argues that the ALJ did not fail in his duty to develop the record and that Marquez has shown no prejudice from the lack of the additional records.  Docket No. 20 at 8.  Third, the Commissioner argues that the ALJ's credibility finding was supported by the evidence.  Docket No. 20 at 9-10.

## III.   THE STANDARD OF REVIEW

### A.   AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.      REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health & Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a

sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92;  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988);  *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986);  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[2]  *Id.*

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.   DEVELOPING THE RECORD

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

## B.    THE FIVE STEP EVALUATION

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled. 20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985

-8-

F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"].  This assessment measures whether a claimant can perform past relevant work despite his or her impairment.  20 C.F.R. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.R. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant.  *See* SSR 82-61.  If so, the claimant is not disabled.  If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy.  SSR 82-61.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.

The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c).  If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite

the claimant's disability.  *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

## C.    OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).  Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations

are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.    TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Comm'r of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the

accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or

the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.     PAIN

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

-13-

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

F.      **CREDIBILITY**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health & Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

### G.    MEDICAL TESTS AND EXAMINATIONS

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

## V.    APPLICATION AND ANALYSIS

### A.    THE FACTS

At the time of the hearing, Marquez was twenty-four years of age.  R. 375.  She completed both high school and college.  *Id.*  Marquez began working intermittently on a part-time basis for Trinity KinderCare approximately three years prior to the hearing.  R. 378.  She worked 1.5 to 2 hours per day, three days per week closing the school for the day and locking doors.  *Id*.  Prior to that, from March 1997 to March 1998, Marquez worked four to five days per week as a food service worker.  R. 127.  This job required her to be on her feet six hours a day and to lift up to ten pounds.  R. 128.

When Marquez is not working, she takes care of her son, who was nine months old at the time of the hearing.   R. 378.  She cooks and performs some household cleaning that does not involve exposure to chemicals.  R 378-79.  She can drive and perform grocery shopping.  R. 379.  Marquez

states that she can lift 15-20 pounds, can stand for 30 minutes, and can walk for 10 minutes.  R. 380. She has no problem sitting.  *Id.*

After the last determination of disability on July 2, 1998, physicians associated with Community Medial Associates ["CMA"] treated Marquez for her asthma from December 7, 1999 to February 15, 2002.  R. 281-299.  CMA's records reflect that Marquez went to the emergency room on November 11, 2001, and received a breathing treatment and an injection.  R. 289.  At that time, Marquez informed CMA that she used her Albuterol inhaler several times a week and sometimes used a nebulizer if her symptoms were severe.  *Id.*  On January 14, 2002, Marquez informed CMA that she was using her inhaler a couple of times daily.  R. 285.  CMA increased her Advir from 100/50 to 250/50.  R. 286.  On February 15, 2002, Marquez complained of shortness of breath and wheezing. R. 283.  During the examination, the doctor noted wheeze, and diagnosed her with bronchitis, as well as asthma.  R. 284.

An analysis of emergency room records reveals that Marquez was treated for shortness of breath or asthma related problems on 7/11/98, 12/2/98, 2/5/99, 2/7/99, 2/9/99, 7/13/99, 8/22/99, 9/19/99, 10/17/99, 11/7/99, 9/24/00, 10/20/00, 10/28/00, 8/21/01, 11/11/01, 7/12/02.  R. 274-76.

On August 14, 2001, Dr. Jack E. Pulwers, M.D., conducted a physical examination of Marquez.  R. 327-29.  He noted that Marquez was a half-pack a day smoker for 2 years.  R. 327.  She was 63.5 inches tall, weight 124 pounds, was well-developed and in no acute distress.  R. 327. Marquez demonstrated full range of motion in her upper extremities, with 5/5 bilateral grip strength, and fine manipulation within normal limits.  R. 328.  She also showed full range of motion in her lower extremities, with no evidence of pretibial or ankle edema, ulcerations or varicosities.  R. 329.

-16-

Her range of motion for her back and spine were within the normal range, except for her cervical spine which showed lateral flexion of 15-20 degrees bilaterally.  R. 328.  Dr. Pulwers noted that Marquez's chest x-rays showed an increased CT ratio consistent with chronic obstructive pulmonary disease ["COPD"], but that her lungs were without infiltrates.  R. 329.  He also noted increased interstitial markings throughout the lung fields.  Dr. Pulwers also noted moderate thoracic osteoarthritis with degenerate disc disease ["DDD"] and degenerative joint disease ["DJD"] present.  R. 329.  His final impression was asthma, nicotine abuse, upper respiratory tract infection with right otitis media, cervical and low back pain, and COPD.  R. 329.

On April 6, 2003, Marquez sought non-urgent treatment at Fish Memorial Hospital because she was having difficulty breathing, and was coughing. R. 348, 350.  During this visit, she received treatment from the respiration therapist, and was released to go home "feeling much better."  R. 351.

On December 24, 2003, Marquez went to the emergency room with difficulty breathing due to a cold, congestion and asthma. R. 343-44.  She arrived in good condition by walking in.  R. 344.  Marquez was given medication, and told to follow-up with her primary care physician within four to five days.  *Id*.

On February 21, 2004, Marquez sought non-urgent care from the Florida Hospital emergency department due to cough, congestion, sore throat and shortness of breath after receiving no relief from her usual medications.  R. 361.  She was given a respiratory treatment, and released after she began to breathe better, although she did continue to exhibit symptoms of wheezing.  R. 362.

-17-

**B.      THE ANALYSIS**

The Disability Benefits Reform Act of 1984 eliminated the presumption that a DIB recipient continues to be disabled.  *See* 42 U.S.C. § 423(f) ("Any determination made under this section shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.").  After an individual is awarded disability benefits by the SSA, those benefits will cease upon a showing that there has been medical improvement related to the ability to work. 20 C.F.R. § 404.1594 (a).

To determine improvement, the ALJ is "required to evaluate the medical evidence upon which [the claimant] was originally found to be disabled," and compare it with the new medical evidence. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir.1984).  The point of comparison is the most recent favorable medical decision, that is, the latest final decision involving consideration of the medical evidence and the issue of whether claimant was disabled or continued to be disabled.  20 C.F.R. § 404.1594(b)(7); 20 C.F.R. § 416.994(b)(1)(C)(vii).  If medical improvement has occurred, the next step is to compare the claimant's current RFC with her prior RFC to determine if the claimant's medical improvement is related to the ability to work.  20 C.F.R. § 404.1594(b)(7).

**1.      Exclusive Reliance Upon the Grids**

The ALJ and Marquez agree that Marquez has a non-exertional limitation — she "should avoid concentrated exposure to dusts, fumes, gases, poor ventilation, odors, extreme cold, and humidity."  R. 18, Finding 7.[3]  Marquez argues that, because she has this non-exertional limitation,

---

[3] Non-exertional limitations include environmental restrictions. "Environmental restrictions are those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work,

the ALJ should not have relied solely on the grids to determine that Marquez could perform other work.[4] Rather, Marquez argues that the ALJ should have obtained expert vocational testimony as to whether there are jobs in the national economy that she can perform.  Docket 19 at 13.  The Commissioner responds that non-exertional limitations make the grids inapplicable only when those non-exertional limitations are severe enough to prevent a wide range of gainful employment at the designated level, and that Marquez's limitations were not sufficiently severe.  Docket 20 at 6.

The issue, therefore, is whether the limitation found by the ALJ  —  prohibiting a "concentrated exposure to dusts, fumes, gases, poor ventilation, odors, extreme cold, and humidity" — precludes a wide range of gainful employment in light work.  The Commissioner relies on Social Security Ruling (SSR) 85-15, which provides in relevant part:

> Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.
>
> Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions.
>
> Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS.

SSR 85-15, 1983-1991 Soc.Sec.Rep.Serv. 343, 1985 WL 56857 *8.  In effect, the Commissioner asks this Court to read the ALJ's limitation (which prohibits a "concentrated exposure to dusts, fumes . . .") as if it were a limitation prohibiting "excessive amounts of [ ] dust, etc. . . ." within the meaning of

_____

*e.g.*, an inability to tolerate dust or fumes." Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 at § 200.00(e).

[4]Through the grids, the SSA takes administrative notice of the numbers of light work jobs that exist throughout the national economy that are available to persons with exertional impairments.  Nevertheless, the grids do not take into account the availability of such jobs to persons with non-exertional limitations.

SSR 85-15.  In other words, the Commissioner asks this Court to read into the ALJ's decision a specific finding that Marquez's environmental limitations were not severe enough to preclude a wide range of employment.[5]   Docket 20 at 7.  The Court declines to do so.

Initially, SSR 85-15 provides a framework for decisions concerning persons who have only non-exertional limitations of function or environmental restrictions.  SSR 85-15.  Marquez has both exertional and non-exertional limitations, so SSR 85-15 is inapplicable.  *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir.1995) ("SSR 85-15 has no application to [claimant] because she claims both exertional and non-exertional impairments").

Of course, when both exertional and non-exertional work impairments exist, the grids may still be applicable.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).  The Commissioner is correct that non-exertional limitations cause the grids to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level.  *Id*. at 836.  The ALJ, however, should make a *specific* finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.[6]  *Id*.

The Court understands the difficulty of articulating the severity of Marquez's need to "avoid concentrated exposure to dusts, fumes, gases, poor ventilation, odors, extreme cold, and humidity" in the workplace.  Marquez smoked cigarettes, as the ALJ noted three times in his decision.  R. 15 -

---

[5] The Commissioner agrees that the ALJ should make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment when both exertional and non-exertional limitations affect a claimant's ability to work.  Docket No. 20 at 6.

[6] The ALJ's limitation is based on a State Agency Hearing Officer's Decision that Marquez should avoid "concentrated exposure to extreme cold, humidity and dust, fumes and gases."  R. 17, 62.  The State Agency decision says nothing about poor ventilation or odors.

16.  If she inhaled, then Marquez intentionally ingested concentrated tobacco smoke, fumes, gases, and odors into her lungs.  Dr. Pulwers' disability report dated August 14, 2001 noted that Marquez's history of smoking a half-pack of cigarettes per day for two years, and diagnosed with "Nicotine abuse."[7]  R. 327 - 29.  Also, Marquez cooks for her son, and has worked as a food server.  R. 127, 378.  The record does not reflect whether Marquez ever reacted adversely to food odors or smoke from cooking.

Assuming the ALJ does articulate the severity of Marquez's non-exertional impairment, assessing the impact of that severity on preclusion of employment seems impossible absent VE testimony.  In this case, however, a VE might have testified that there exists sufficient light work in the national economy which a person with Marquez's limitations can perform.[8]

This case is similar to the *Sryock* decision where the ALJ determined that the claimant was physically able to perform light work, but could not work in a "heavily polluted environment" due to breathing problems.  *Sryock*, 764 F.2d at 837.  The court's decision in *Sryock* found the record was unclear regarding what sort of pollution or other impurities in the work environment would make it impossible for the claimant to perform light work.  *Id*.  The court, therefore, was unable to determine whether the environmental limitations were so severe as to preclude use of the grids.  *Id*.  In this case, the Court is unable to determine whether the restriction upon Marquez's exposure to fumes, gases and odors is so severe as to make reliance upon the grids improper.  Remand is required.

_____

[7]Marquez denied being a smoker at the time of the ALJ hearing on April 13, 2004.  R. 377.

[8]The Court understands that budget constraints may discourage expenditures for VE testimony at the ALJ hearings.  Nevertheless, unnecessary review thereafter is far more costly  —  the Appeals Council, the Office of General Counsel, the United States District Court (United States Magistrate Judges and sometimes review by United States District Judges), and occasionally the United States Court of Appeals for the Eleventh Circuit.

2.    **The ALJ's Duty To Fully and Fairly Develop the Record**

Marquez next argues that the ALJ failed in his duty to fully and fairly develop the record

because he failed to request hospital records.  Marquez testified that she had been to the hospital

"quite a few times" in the six months prior to the hearing.  Docket 19 at 14-15.  Marquez argues that

the ALJ should have tried to obtain this additional documentation from the hospital.  Docket 19 at 15-

16.

Marquez's argument ignores the fundamental principle that the claimant bears the burden of

producing evidence to support her disability claim.  Applicable regulations provide:

> Obtaining evidence from your medical sources.  You must provide us with reports
> from your physician, psychologist, or others who have treated or evaluated you, as well
> as any other evidence that will help us determine if you are still disabled.  See §
> 416.912.  You must have a good reason for not giving us this information or we may
> find that your disability has ended.  See § 416.994(e)(2).  If we ask you, you must
> contact your medical sources to help us get the medical reports.  We will make every
> reasonable effort to help you in getting medical reports when you give us permission
> to request them from your physician, psychologist, or other medical sources.  See §
> 416.912(d)(1) concerning what we mean by every reasonable effort.  In some
> instances, such as when a source is known to be unable to provide certain tests or
> procedures or is known to be nonproductive or uncooperative, we may order a
> consultative examination while awaiting receipt of medical source evidence.  Before
> deciding that your disability has ended, we will develop a complete medical history
> covering at least the 12 months preceding the date you sign a report about your
> continuing disability status.  See § 416.912(c).

20 C.F.R. 416.993(b).

In this case, Marquez's representative advised the ALJ that he intended to submit additional

hospital records within 10 days after the hearing.  R. 374-75.  The ALJ stated he would not make his

decision until he received the medical evidence.  R. 383.  The ALJ in fact waited more than two

months after the hearing before issuing his decision.  R. 11, 372.  Marquez has not provided any

-22-

reason for failing to submit the additional medical records when given the opportunity.  Further, there is no evidence that Marquez requested the Commissioner's assistance in obtaining the records.

This case is analogous to *McCloud v. Barnhart*, 166 Fed. Appx. 410, 2006 WL 177576 (11th Cir. Jan. 25, 2006).  In *McCloud*, the claimant argued on appeal, *inter alia,* that the ALJ failed to develop a full a fair record because he failed to obtain records of several hospital visits.  *Id.* at 417. The Eleventh Circuit noted that, although the regulations provide that the Commissioner will develop a complete medical history for the 12 month period preceding the application, it is the claimant's responsibility to produce evidence to support her application.  *Id.* at 418.  The ALJ, therefore, did not fail to fully and fairly develop the record by failing to subpoena the claimant's medical records and the claimant never signed a release authorizing release of her records.  *Id.*  Similarly, the ALJ  fulfilled his duty in this case to fully and fairly develop the record regarding Marquez's medical condition.

### 3.      The ALJ's Credibility Finding

Marquez argues that the ALJ erred in finding her "not fully credible."  R. 18, Finding 6.  The Commissioner argues that the ALJ properly assessed Marquez's credibility.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health & Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

-23-

In this case, the ALJ found that Marquez's testimony regarding her limitations was exaggerated compared to the medical evidence.  R. 16.  He specifically discussed Marquez's complaints regarding shortness of breath and wheezing, but found that the medical records show that Marquez was responding well to her medication despite the fact that she continued smoking.  R. 17.  The ALJ also specifically discussed Marquez's testimony regarding her limitations on standing, walking and lifting, and contrasted that with other testimony that she is able to do laundry, work part-time, drive her car, grocery shop, and take care of an infant child.  R. 17.  The ALJ has articulated sufficient specific reasons for discrediting Marquez's testimony, and those reasons are supported by substantial evidence. The Court, therefore, finds no error.

## VI.   **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **REMANDED** to the Commissioner for further proceedings not inconsistent with this decision.  The Clerk should enter a separate judgment and close the case.

**DONE AND ORDERED** this 26th day of March, 2007.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Albert D. Tutera
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL          32817